1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8   TAKE2 TECHNOLOGIES LIMITED, et                Case No.   5:23-cv-04166-EJD
    al.,

9                Plaintiffs,                      **ORDER GRANTING IN PART
                                                 MOTION TO DISQUALIFY**
10        v.

11                                               Re: ECF No. 75
    PACIFIC BIOSCIENCES OF
12  CALIFORNIA INC,

13               Defendant.

14        Plaintiffs Take2 Technologies Limited ("Take2") and the Chinese University of Hong

15  Kong move to disqualify the entire in-house legal department at Defendant Pacific Biosciences of

16  California ("PacBio").  ECF No. 75 ("Mot.").  The Court heard oral arguments on October 26,

17  2023.  Based on the submitted arguments and evidence, the Court GRANTS IN PART Plaintiffs'

18  motion and ORDERS the parties to meet-and-confer as to the appropriate scope of relief.

19  **I.        BACKGROUND**

20        Prior to August 2022, Ms. Yang Tang was employed as an attorney at Perkins Coie, the

21  law firm that is presently representing Plaintiffs Take2 Technologies Limited ("Take2") and the

22  Chinese University of Hong Kong.  Decl. Michael J. Wise ("Wise Decl.") ¶ 2, ECF No. 75-1.

23  Between April and July 2022, Ms. Tang billed over 65 hours on behalf of Take2, including

24  preparation for the present lawsuit and evaluating the '794 Patent-in-Suit.  *Id.*

25        In August 2022, Ms. Tang departed from Perkins Coie and accepted employment as a

26  senior intellectual property in-house counsel at Defendant Pacific Biosciences of California.  Decl.

27  Yang Tang ("Tang Decl.") ¶ 5, ECF No. 84; Wise Decl. ¶ 4.  Before accepting the PacBio offer,

28  Case No.: 5:23-cv-04166-EJD
    ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
                                          1

United States District Court
Northern District of California

1   Ms. Tang informed Perkins Coie of the offer, indicated that she would not be involved on any

2   Take2 matters, and consulted outside counsel before accepting the offer.  Tang Decl. ¶¶ 6–7.

3           Approximately three months later, on December 14, 2022, Plaintiffs filed the present

4   infringement action against PacBio in the District of Delaware.  ECF No. 2.  A few weeks later,

5   Plaintiffs' counsel sent a letter to Defendant's litigation counsel, flagging Ms. Tang's conflict and

6   requesting confirmation of proper ethical screening within PacBio.  Wise Decl., Ex. A ("Dec. 30

7   Letter").  In response, PacBio's counsel confirmed—in a letter signed and certified by PacBio's

8   general counsel and Ms. Tang—that PacBio's general counsel had instructed the company's legal

9   department that Ms. Tang was not to work on or discuss any Take2 matters.  Wise Decl., Ex. B

10  ("Jan. 24 Letter").  In addition to the written instructions, PacBio maintains a restricted document

11  repository relating to the Take2 matter that Ms. Tang cannot access and affirmed that Ms. Tang

12  will not be apportioned any fees relating to the matter.  *Id.*  PacBio additionally confirmed that it

13  reiterated the screening instruction when Take2 filed the present lawsuit in December 2022.  *Id.*

14          After providing the requested certification, PacBio did not receive any further complaints

15  from Plaintiffs regarding the adequacy of the ethical screens or an intent to move for

16  disqualification at the time.  Opp. 5.  However, after PacBio moved to transfer the action from the

17  District of Delaware to the Northern District of California, Plaintiffs' counsel reminded PacBio of

18  Ms. Tang's conflict with the additional remark that—if the matter is transferred to this district—it

19  "reserve[d] its rights to pursue all available remedies . . . include[ing] the right to move to

20  disqualify PacBio's legal department."  Wise Decl., Ex. C ("Mar. 30 Letter").  PacBio proceeded

21  with and prevailed on its transfer motion.  ECF No. 61.

22          On September 20, 2023, Plaintiffs filed the instant motion to disqualify "PacBio's in-house

23  legal department from representing PacBio in the Instant Action."  Mot. 3.

24  **II.    LEGAL STANDARD**

25          "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

26  powers."  *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918

27  (N.D. Cal. 2003); *Nat'l Grange of Ord. of Patrons of Husbandry v. California Guild*, 38 Cal. App.

28  Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
2

1   5th 706, 713 (2019) ("Whether an attorney should be disqualified is a matter addressed to the

2   sound discretion of the trial court."). Furthermore, the Court must "apply state law in determining

3   matters of disqualification." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

4   Motions to disqualify counsel are subjected to "particularly strict judicial scrutiny," given

5   the potential for tactical abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760

6   F.2d 1045, 1050 (9th Cir. 1985); *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*

7   ("*SpeeDee Oil*"), 20 Cal. 4th 1135, 1144 (1999) ("[J]udges must examine these motions carefully

8   to ensure that literalism does not deny the parties substantial justice."). A disqualification motion

9   involves a "conflict between the clients' right to counsel of their choice and the need to maintain

10  ethical standards of professional responsibility." *Id.* However, "while the 'drastic measure' of

11  disqualification is 'generally disfavored and should only be imposed when absolutely necessary,'

12  '[t]he important right to counsel of one's choice must yield to ethical considerations that affect the

13  fundamental principles of our judicial process.'" *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 2019

14  WL 144589, at *3 (N.D. Cal. Jan. 9, 2019) (internal citation omitted).

### III.   DISCUSSION

16  The Court first considers whether Ms. Tang's conflict may be imputed to her "firm" under

17  the CRPC before turning to the proper scope of any such disqualification.

#### A.   Disqualification and Vicarious Imputation

19  PacBio does not appear to dispute that—given her past work at Perkins Coie relating to

20  Take2—Ms. Tang may not work on any matters at PacBio that involve Take2, as evidenced by the

21  internal ethical screens PacBio promptly implemented around Ms. Tang. *See, e.g.*, Jan. 24 Letter.

22  The primary point of contention, therefore, is whether Ms. Tang's conflict may be imputed to

23  other "lawyers [] associated in [her] firm." Cal. R. Prof. Conduct ("CRPC") 1.10(a).

24  The applicable framework for imputation of conflicts is set forth in Rule 1.10. *See Klein v.*

25  *Facebook, Inc.*, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021) (analyzing vicarious

26  disqualification under CRPC 1.10(a) and its comments). Rule 1.10(a) begins by establishing a

27  general imputation of conflicts to other lawyers associated in the same firm as the prohibited

28  Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
3

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   lawyer.  CRPC 1.10(a).  The Rule then carves out two exceptions to the prohibition where the

2   conflict arises from (1) the conflicted lawyer's personal interest or (2) the lawyer's association

3   with a prior firm.  CRPC 1.10(a)(1)–(2).  Under the second exception, the CRPC does *not* impute

4   conflicts to the firm if the lawyer (i) "did not substantially participate in the same or a substantially

5   related matter," (ii) is "timely screened from any participation in the matter and is apportioned no

6   part of the fee," and (iii) "written notice is promptly given to any affected former client."  CRPC

7   1.10(a)(2)(i)–(iii).  In reviewing "substantial participation," courts may consider several factors,

8   such as "such as the lawyer's level of responsibility in the prior matter, the duration of the

9   lawyer's participation, the extent to which the lawyer advised or had personal contact with the

10  former client, and the extent to which the lawyer was exposed to confidential information of the

11  former client likely to be material in the current matter."  CRPC 1.10 cmt. 1; *Klein, Inc.*, 2021 WL

12  3053150, at *5 (addressing Comment 1 to Rule 1.10 in assessing prohibited layer's participation).

### 1.    Implied Waiver

14      Before turning to the substantive analysis of Plaintiffs' motion, the Court first addresses

15  and rejects Defendant's argument that Plaintiffs have implicitly waived their right to seek

16  disqualification by delaying their motion.  Opp. 8–10.  Plaintiffs here made their motion as soon as

17  the motion was available to them under the applicable rules of professional conduct, gave

18  Defendant notice of the conflict within two weeks of filing their complaint, and take issue with a

19  serious and undisputed conflict involving Ms. Tang's prior work on the very patent-in-suit.

20  Defendant's reliance on the Court's prior holding in *Quicklogic Corporation v. Konda*

21  *Technologies*, 618 F. Supp. 3d 873 (N.D. Cal. 2022), is misplaced, as that case involved a

22  *lengthier* delay where the moving party gave *no indication* of a *potential* conflict.  *Id.* at 882–83.

23  On the present facts, however, the Court cannot find that Plaintiffs slept on their rights to bring the

24  present motion when they moved to disqualify promptly after the action arrived in this district.

25      Additionally, to the extent that Defendant's implicit waiver argument rests on a

26  "reasonabl[e] belie[f] that Plaintiffs had accepted the screening procedures it sought as adequate"

27  when Plaintiffs did not follow up on Defendant's letter response, Opp. 5, such a theory would be

28  Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION

United States District Court
Northern District of California

1    suspect under the facts and the relevant California Rule of Professional Conduct.  Here, only about

2    two months had lapsed between Defendant's January 24 Letter providing evidence of its ethical

3    screens and Plaintiffs' March 30 Letter expressing their intent to seek disqualification in

4    California, which somewhat undercuts Defendant's assertion of reliance.  *Compare* Jan. 24 Letter

5    *with* Mar. 30 Letter.  Moreover, if Defendant wanted waiver assurances that it could rely on,

6    Defendant was permitted to seek Plaintiffs' *affirmative* waiver by informed written consent.

7    CRPC 1.10(c) ("A prohibition under this rule may be waived by each affected client under the

8    conditions stated in rule 1.7.").  Especially given the intimate and serious nature of the conflict in

9    question, Defendant's implicit waiver arguments are unpersuasive.

10                    **2.       Rule 1.10 and Substantial Participation**

11           Although the CRPC's rule on conflict imputation is set forth at Rule 1.10, neither party

12    cite—much less substantively analyze—Rule 1.10 in any of their briefs or during oral arguments,

13    a somewhat disconcerting occurrence given the dramatic remedy that Plaintiffs request and that

14    Defendant is called upon to oppose.  Instead, the parties quarrel over the interpretation of the 1992

15    California Court of Appeal decision, *Henriksen v. Great Am. Sav. & Loan*, 11 Cal. App. 4th 109

16    (1992), and the 2010 decision, *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010).  *See*

17    Mot. 7–8; Opp. 10–12; Reply 2–5.

18           Although Plaintiffs' motion relies heavily on *Henriksen* for the proposition that vicarious

19    disqualification must occur as a matter of law without regards to ethical screening, 11 Cal. App.

20    4th at 116–17, this holding has since been substantially undermined by the California Supreme

21    Court's decision in *SpeeDee Oil*, 20 Cal. 4th 1135 (declining to apply a rule that ethical screening

22    could *never* rebut an imputation of conflicts).  *See In re Cnty. of Los Angeles*, 223 F.3d 990, 995

23    (9th Cir. 2000) (analyzing *SpeeDee Oil* and how it had "recently cast doubt" on the *Henriksen*

24    holding).  More critically, both parties' dueling cases (*Henriksen* and *Kirk*) were expressly issued

25    under an acknowledgment that vicarious disqualification was not settled law under the California

26    Rules of Professional Conduct.  *See Henriksen*, 11 Cal. App. 4th at 114 ("The California Rules of

27    Professional Conduct do not specifically address the question of vicarious disqualification, and for

28    Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
5

United States District Court
Northern District of California

1   that reason the vicarious disqualification rules have essentially been shaped by judicial

2   decisions."); *Kirk*, 183 Cal. App. 4th at 805 ("We agree with the Board of Governors that the issue

3   of whether attorney screening can overcome vicarious disqualification in the context of an

4   attorney moving between private law firms is not clearly settled in California law.").  However,

5   after Rule 1.10 went into effect on November 1, 2018, there is little reason why this Court should

6   take up the parties' dispute over the interpretation of case law pre-dating the passage of a directly

7   applicable Rule of Professional Conduct. *See Klein*, 2021 WL 3053150, at *4–9.  Accordingly,

8   the Court will analyze the conflict imputation under CRPC 1.10(a), instead of the cited case law.

9          Turning to the Rule 1.10(a)(2) exception analysis, the Court first notes that Defendant has

10   proffered no evidence or argument to show that it is entitled to this exception.  *See* Opp. 10–12.

11   That said, even setting aside the lack of direct arguments and reviewing the evidence generally,

12   the Court finds that Defendant would have been unlikely to demonstrate that Ms. Tang "did not

13   substantially participate in the same or a substantially related matter," one of the three necessary

14   requirements for this exception.[1]  CRPC 1.10(a)(2)(i).  Plaintiffs have proffered undisputed

15   evidence that Ms. Tang was counsel at Perkins Coie, had "billed over 65 hours on behalf of Take2

16   preparing the instant lawsuit against PacBio," and had evaluated the specific '794 patent-in-suit

17   and Take2's claim of infringement against PacBio.  Wise Decl. ¶ 2.  Although the number of

18   hours Ms. Tang billed is not exceedingly high, the Court finds that—given her seniority and

19   experience in "patent procurement, patent strategy counseling, [and] patent portfolio evaluation"

20   (*see* Suppl. Decl. Michael Wise, Ex. E, ECF No. 87-1)—Ms. Tang would have likely performed

21   substantive work on the matter and been exposed to confidential Take2 information when she

22   analyzed the patent-in-suit and assessed the merits of Take2's infringement claim.  By contrast,

23   the only relevant remarks that Defendant and Ms. Tang offered about her prior employment were

24   that she "never appeared as an attorney in litigation" and was "not a litigator."  Tang Decl. ¶ 4.

25

26

27   ---

[1] Although the Court need not reach the other required elements in Rule 1.10(a)(2), the Court
notes that Ms. Tang appears to have been timely screened at PacBio and that the evidence is
unclear as to whether "written notice [was] promptly given to [Take2]."  CRPC 1.10(a)(2)(ii)–(iii).

28   Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION

1    While helpful context, these remarks notably do not contain any comments on Ms. Tang's prior

2    Take2 representation nor do they dispute any of the facts proffered by Perkins Coie.  Given the

3    lack of evidence from Defendant, as well as Plaintiffs' affirmative evidence of Ms. Tang's

4    participation while at Perkins Coie, the Court cannot find that Ms. Tang "did not substantially

5    participate in the same or a substantially related matter" for the purposes of Rule 1.10(a)(2).

6        Accordingly, the conflict imputation at Rule 1.10(a) remains effective, and Ms. Tang's

7    conflict with respect to Take2 extends to all lawyers with whom she is "associated in a firm."

8        **B.    Scope of Disqualification**

9        Having determined that Ms. Tang's conflict may be imputed in this action, the Court turns

10   next to the scope of imputation and disqualification.  If Ms. Tang were an attorney at a

11   conventional law firm, the scope of disqualification would be her entire firm.  *See, e.g.*, *Klein*,

12   2021 WL 3053150; *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 2019 WL 144589 (N.D. Cal. Jan. 9,

13   2019).  However, Ms. Tang's current employment as in-house counsel for a private litigant

14   warrants a more nuanced and cautious approach to the proper scope of disqualification.

15       To begin, neither Plaintiff nor the Court has been able to identify a California case where

16   an in-house counsel or department was vicariously disqualified under Rule 1.10 or otherwise.

17   Without any guidance on the mechanics for in-house vicarious disqualification, the Court turns

18   again to Rule 1.10, which provides that "[w]hile lawyers are associated *in a firm*, none of them

19   shall knowingly represent a client when any one of them practicing alone would be prohibited

20   from doing so."  CRPC 1.10(a) (emphasis added).  The CRPC defines a "firm" as, *inter alia*,

21   "lawyers employed . . . in the legal department, division or office of a corporation."  CRPC

22   1.01(c).  Taking these two sections together, the operative prohibition in Rule 1.10 would read:

23   "While lawyers are associated [as lawyers employed in the legal department, division or office of

24   a corporation], none of them shall knowingly represent a client when any one of them practicing

25   alone would be prohibited from doing so."  Despite the slightly stilted wording, Rule 1.10 appears

26   to permit an imputation of conflicts among associated in-house counsel within a corporation.

27       The Court, however, is reluctant to "disqualify" every in-house lawyer at PacBio.  Such a

28   Case No.: 5:23-cv-04166-EJD
     ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
                                          7

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sweeping order would be too strong a medicine for a purported affliction that even Plaintiffs

2    concede would be acceptable under the ABA's Model Rules of Professional Conduct.  *See* Reply

3    5 ("Plaintiffs could not have in good faith filed the present Motion in the District of Delaware

4    because the rules requiring disqualification here, are not applicable in the District of Delaware.").

5    Moreover, the somewhat awkward fit of the "lawyers employed in the legal department, division

6    or office of a corporation" definition into the language of Rule 1.10 leaves open some possible

7    constructions whereby the conflict is imputed only to other lawyers "*associated*" with the

8    conflicted lawyer and *within* her specific department, division, or office of the in-house legal team.

9    In the absence of prior California or federal cases that have disqualified in-house legal counsel, the

10   Court will exercise its discretion to order only the disqualification of a narrower scope of

11   individuals within PacBio's in-house legal department, specifically those lawyers that share some

12   association with Ms. Tang other than mere employment by PacBio.

13        Although the Court recognizes that this remedy would call for additional facts relating to

14   PacBio's internal legal operations, the Court believes that a tailored and fact-specific approach is

15   warranted where the disqualification purports to apply to in-house counsel.  This consternation is

16   shared by the California State Bar's Committee on Professional Responsibility & Conduct

17   ("Committee").  As of the date of this Order, the Committee is deliberating a draft ethics opinion

18   that would offer guidance on conflicts of interest that arise when an in-house lawyer moves from

19   one company to another, including a discussion of Rule 1.10 screening in the patent context.  *See*

20   State Bar Cal. Comm. Prof. Responsibility Conduct, "In-House Counsel Draft Opinion," 21-0003

21   (Oct. 20, 2023), https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000031696.pdf.

22   Notably, during one of their public discussions on draft opinion 21-0003, the Committee members

23   expressed reluctance towards the prospect of vicariously disqualifying an entire company's in-

24   house legal department.  *See* The State Bar of California Meetings, *Comm. Prof. Responsibility &*

25   *Conduct 6-23-23*, YouTube (Jun. 28, 2023), at 48:30 ("You can't disqualify a . . . company's legal

26   department, you know.  That doesn't make any sense. . . . I think that the disqualification analysis

27   where there's, you know, automatic vicarious disqualification can't apply in an in-house setting

28   Case No.: 5:23-cv-04166-EJD
     ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION

1    and . . . there has to be a flexible approach."), https://www.youtube.com/watch?v=m_U7f6daLgs.

2    If and when this draft ethics opinion is published, the Court would have the benefit of the

3    Committee's analysis and guidance.  *See, e.g.*, *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105

4    F. Supp. 3d 1100, 1107 (E.D. Cal. 2015) ("When faced with ethical disputes, courts may also look

5    to ethics opinions from California and other jurisdictions.").  Currently, however, the Court cannot

6    accord any authoritative weight to the Committee's deliberations of the 21-0003 opinion and

7    merely cites this discussion to highlight the far-reaching consequences of Plaintiffs' requested

8    disqualification, as well as the prudence behind a fact-driven scope of disqualification.

9          That said, neither party has presented the necessary facts and evidence for the Court to

10   fashion an appropriate remedy for the imputed in-house disqualification.  Accordingly, the Court

11   ORDERS the parties to meet-and-confer as to an acceptable scope and method of disqualification

12   within PacBio's in-house legal organization.  The parties SHALL submit a joint stipulation with a

13   proposed order containing the preventative measures the Court should order PacBio to implement.

14   The proposed measures shall effectuate the disqualification within PacBio's legal department no

15   more than absolutely necessary and must be "prophylactic, not punitive," in nature.  *California*

16   *Self-Insurers' Sec. Fund v. Superior Ct.*, 19 Cal. App. 5th 1065, 1079 (2018).  The Court will

17   further note that the parties may discuss an arrangement that involves Plaintiff Take2's waiver of

18   the imputed conflict pursuant to CRPC 1.7.  *See* CRPC 1.10(c).

19         If the parties are unable to arrive at a joint stipulation, they may submit a joint statement

20   containing separate proposals to the Court.  The joint statement shall be accompanied by evidence

21   or declarations regarding PacBio's in-house legal department that would permit the Court to

22   determine the scope and means of the disqualification.  The evidence submitted should be

23   sufficient to establish, at a minimum, the following: (1) the approximate size of PacBio's legal

24   department; (2) Ms. Tang's current position and role in PacBio's legal organization, including

25   how many attorneys she manages and who she reports to; (3) the relation of Ms. Tang's role and

26   team to the in-house litigation team handling the present action, including the frequency and topic

27   of any interactions; (4) all existing preventative measures to screen Ms. Tang from other PacBio

28   Case No.: 5:23-cv-04166-EJD
     ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
                                       9

United States District Court
Northern District of California

United States District Court
Northern District of California

1   attorneys; (5) identification of the primary PacBio liaisons with outside defense counsel for this

2   matter; (6) identification of all members of PacBio's in-house legal department with whom Ms.

3   Tang has communicated about the subject of the present matter, including discussions for conflict

4   purposes; and (7) identification of any teams or individuals in PacBio's legal organization that

5   have had *no* contact or interactions with Ms. Tang.

6   **IV.   CONCLUSION**

7   Based on the foregoing, Plaintiffs' motion to disqualify is GRANTED IN PART and

8   DENIED IN PART.  Ms. Tang is disqualified from representing Defendant PacBio in the present

9   matter, as is any lawyer who is associated with Ms. Tang in the same "department, division or

10  office."  The parties are ORDERED to meet-and-confer as to an acceptable arrangement for the

11  imputed disqualification within PacBio's internal legal organization, no later than 14 days from

12  the date of this Order.  No later than 21 days after this Order, the parties SHALL submit a joint

13  proposal or a joint statement (not to exceed 15 pages in length) setting forth separate proposals

14  accompanied by the evidence the Court highlighted above.

15  With respect to a stay of discovery referenced in the parties' joint case management

16  conference statement, no party has formally moved or stipulated for such a stay.  However, given

17  the findings and determinations in this Order, the Court STAYS discovery until the parties have

18  submitted their joint proposals to the Court and the Court has issued a subsequent order

19  effectuating the disqualification found in this Order.

20  **IT IS SO ORDERED.**

21  Dated: November 6, 2023

23

24  EDWARD J. DAVILA
United States District Judge

28  Case No.: 5:23-cv-04166-EJD
ORDER GRANTING IN PART MOTION FOR DISQUALIFICATION
10